UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 15-10393-RGS

UNITED STATES OF AMERICA

v.

TIMOTHY FLETCHER

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS
AND MOTION FOR A *FRANKS* HEARING

November 20, 2017

STEARNS, D.J.

Defendant Timothy Fletcher is charged with possession of cocaine and cocaine base with intent to distribute and with being a felon in possession of firearms and ammunition. He seeks to suppress incriminating items seized from his person, from a vehicle in which he was a passenger, and from a rental storage locker that he shared with his mother. The seizures were made pursuant to search warrants issued on April 2, 2015, by Massachusetts District Court Judge John M. Julian (the Second Warrant), and on April 3, 2015, by Barnstable Clerk-Magistrate Charles J. Ardito III (the Third Warrant).[1] The two warrants at issue grew out of an earlier warrant (the

---

[1] As the issues raised are to be decided within the four corners of the warrants and their accompanying affidavits, *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999), the court did not see a need for an evidentiary hearing. The court did, however, hear oral argument on the possible need for a *Franks* hearing, among other issues.

First Warrant) authorizing the installation of a GPS tracking device on a Ford Exhibition owned by Brooke Cotell (who is alleged to have aided and abetted Fletcher in conducting his drug dealing).[2] The Second Warrant was directed to the persons of Fletcher and Cotell, as well as her Ford Exhibition, and to Room 202 of the Clarion Hotel in Yarmouth, Massachusetts, which had been rented by Fletcher for himself and Cotell. The Third Warrant was directed to locker Unit #26 at a Simple Storage facility in Hyannis, Massachusetts.

Fletcher challenges the Second and Third Warrants on four grounds: (1) that the Third Warrant was tainted by illegal searches of the storage facility and the locker unit conducted prior to the police obtaining a warrant; (2) that affidavits supporting the Second and Third Warrants failed to demonstrate probable cause to believe that incriminating evidence would be found in Fletcher's actual or constructive possession; (3) that police exceeded the scope of the Third Warrant by conducting a "general" seizure of evidence from the storage locker; and (4) that the officer-affiants (Yarmouth Police Detective Christopher Kent, the author of the Second Warrant affidavit, and Barnstable Police Detective Lieutenant Sean Balcom,

---

[2] Fletcher does not challenge the validity of the First Warrant.

the author of the Third Warrant affidavit) made intentionally false or reckless statements or omissions in the affidavits supporting the issuance of the Second and Third Warrants.[3]

The arguments for suppressing the evidence seized from Fletcher's storage locker pursuant to the Third Warrant are framed on the following propositions: (1) that Fletcher has standing to challenge the entry of Simple Storage by police as well as the search of the locker on the basis of his shared rental of the locker unit with his mother[4]; (2) that the affidavit in support of the Second (and by incorporation the Third) Warrant is defective because Detective Kent (the author of the Second Warrant affidavit) never met face-to-face with Confidential Informant 2 (CI-2), but rather relied on another officer's (Barnstable Police Detective Colin Kelley) assurance of CI-2's credibility[5]; (3) that police made unlawful warrantless entries of the storage

---

[3] Where a search is conducted pursuant to a warrant, the burden falls to the defendant to prove that the search was nonetheless unlawful – proof is by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

[4] The court assumes that Fletcher's showing of joint ownership of the locker with his mother is sufficient to establish personal standing. The government does not seriously contend otherwise.

[5] As Detective Balcom attached and incorporated Detective Kent's affidavit in his own, the information in the two affidavits is treated as one.

facility and the locker unit prior to obtaining the Third Warrant; and (4) that the seizures from the locker unit "grossly exceeded" what was authorized by the Third Warrant.[6]

These arguments, as will be shown, fall under the weight of the documented facts. Confidential Informant 1 (CI-1), who linked Fletcher's drug dealing to the Simple Storage locker by describing to a "T" the layout of the interior of the facility, the specific location of the locker unit, and the manner in which it was singularly secured with a U-Haul padlock, spoke clearly from personal knowledge. *See Spinelli v. United States*, 393 U.S. 410, 425 (1969) (White, J., *concurring*), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (2012) (even where the basis of the informant's knowledge is unexplained, the detail and precision of the information "may sometimes imply that the informant himself has observed the facts"). The inference is unshakeable in the case of CI-2, who testified to being present in Fletcher's hotel room while Fletcher cooked a batch of cocaine base, and who also went along for the ride when Fletcher was driven by one of his female

---

[6] Although Fletcher complains of rough treatment during the execution of the Second Warrant (and denies having tried to hide the keys to the locker unit) he does not challenge the scope of the seizures from his person (namely, the keys, eleven "baggies" of cocaine, and $1,168 in cash).

4

runners to a drug sale. These recitals presumptively satisfy the basis-of-knowledge prong of the *Aguilar-Spinelli* test to the extent that test is at all relevant. *See United States v. Del Toro Soto*, 676 F.2d 13, 19-20 (1st Cir. 1982) (that informant claimed to have watched defendants steal mail sufficient to establish personal knowledge). *Compare Illinois v. Gates*, 462 U.S. 213 (1983):

> [I]t is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. . . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

*Id.* at 232, 238-239. That Detective Kent relied on another officer's (Detective Kelley's) assessment of CI-2's reliability (the second prong of the *Aguilar-Spinelli* test) is of no moment.[7] It is hornbook law that a police-officer informant recited as a source of information in a warrant affidavit is

---

[7] The reliability of CI-1 is established by his or her willingness to personally engage in controlled buys of drugs from the defendant and Cotell. *See* Wayne R. LaFave, 2 SEARCH AND SEIZURE § 3.3(f) (5th ed. 2012).

5

presumptively reliable. *United States v. Ventresca*, 380 U.S. 102, 111 (1965).

Next, although Fletcher has standing to object to the search of the storage locker, he has no standing to object to the police entry of the storage facility itself. A defendant has no expectation of privacy in the common areas of a premises he shares with others, including a common storage area. *See United States v. Thornley*, 707 F.2d 622, 624-625 (1st Cir. 1983) (no reasonable privacy expectation in a freely accessible basement of an apartment building used by tenant for storage); *see also United States v. Hawkins*, 139 F.3d 29, 32-33 (1st Cir. 1998).[8] This is especially true when he has no ownership or possessory interest in the common areas at issue. *See United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977) (doctor-proprietor had no expectation of privacy in a print shop owned by his hospital corporation); *cf. United States v. Sarkisian*, 197 F.3d 966, 986-987 (9th Cir. 1999) (same, while defendants had a right of access to a storage unit, they neither paid the rent nor claimed an ownership interest in the stored

---

[8] Fletcher's argument is further weakened by the fact that police entered the storage facility with the knowledge and implicit permission of its owner, the only individual with standing to object to a search of the facility's common areas.

items). Finally, assuming that the police did in fact open and inspect the locker prior to obtaining a search warrant (the government vigorously denies that this was the case), [9] that fact would have Fourth Amendment significance only if information obtained from a warrantless search had found its way into the application for the Third Warrant presented to the issuing Magistrate. In this respect, the case is controlled by the independent source doctrine and the Supreme Court's decision on almost identical facts in *Murray v. United States*, 487 U.S. 533, 542 (1988) ("So long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply.").

In a careful examination of Detective Balcom's affidavit, I find no suggestion, however faint, that it contains any information that arguably was gleaned from a warrantless search of Fletcher's locker prior to the

---

[9] The affidavits of Fletcher's mother and Investigator Clark describing conversations they had with the owner of Simple Storage (Andrew Adair) are more corroborative of the government's denial that any search of the locker unit (as opposed to entry of the facility) took place during daylight hours on April 3, 2015, when Adair met the searching officers at the facility prior to the search, than they are of Fletcher's assertion to the contrary. The key fob record in fact corroborates Detective Balcom's testimony that the search of the locker unit took place shortly after 1 p.m. on April 3.

presentment to the Magistrate. While under *Murray,* the prosecution is obligated to prove that the officer's decision to seek a warrant was not prompted by the prior illegal search, *id.* at 542-543 & n.3, here it is clear that the decision to seek the warrant was based on the information provided by the confidential informants, by the seizure from Fletcher's person of keys that appeared to be consistent with those customarily used to access a storage locker, by the early morning confirmation from the owner of the facility that locker Unit #26 had been rented by Fletcher's mother and frequented by Fletcher on a regular basis (according to the owner, often "multiple times per day"), and by the surveillance of Fletcher entering Simple Storage and then being driven by Cotell to sell drugs to the occupant of a white minivan shortly before the two were arrested (but a few hours before the Third Warrant issued).

Under the prevailing law, when tainted information infects a warrant affidavit, a court is to apply the redaction doctrine. *United States v. Veillette*, 778 F.2d 899, 903-904 (1st Cir. 1985) (after excising information obtained as the result of an illegal entry, sufficient probable cause remained to provide an independent basis for issuance of the warrant). Despite *dicta* to the contrary in *Murray* (cited by Fletcher), the government is not required

to prove that the Magistrate would have issued the warrant despite being exposed to tainted information in the affidavit.[10] *United States v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992) ("Nothing in *Murray* [other than the sentence fragment concerning information that might have affected the magistrate's decision] . . . indicates that the Supreme Court intended to reject the prevailing *Franks*-inspired [excision] rules"); *United States v. Dessesaure*, 429 F.3d 359, 366-367, 369 (1st Cir. 2005) (same – the focus is "wholly objective"). That said, I find there is nothing to be excised.

Consequently, probable cause[11] supported the issuance of the Third Warrant based on: (1) the information provided by CI-1 that Fletcher used Simple Storage as a hiding place for his drugs and replenished his drug supply as needed from a padlocked storage locker on the premises; (2) the

---

[10] I am also unpersuaded by defendant's attempt to distinguish *Murray* on its facts in his Supplemental *Franks* Memorandum [Dkt #96].

[11] Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion) (internal citation omitted).

independent corroboration of Fletcher's frequent access of the locker which proved consistent with CI-1's description of Fletcher's drug dealing *modus operandi*; (3) both from the owner of Simple Storage and from police surveillance on the night of April 2, 2015, when Cotell was observed dropping Fletcher briefly at Simple Storage and then driving off with him to a rendezvous with a drug customer (two hours before the execution of the Second Warrant); (4) the earlier seizure from Fletcher's person (pursuant to the Second Warrant) of eleven baggies of cocaine and a significant amount of cash; (5) the incorporation of Detective Kent's affidavit supporting the Second Search Warrant detailing a second reliable informant's (CI-2) report of extensive drug dealing on Fletcher's part, often in the company of Cotell; (6) Cotell's four controlled sales of drugs to CI-1 during the eighteen days preceding the execution of the Second Warrant[12]; (7) and Fletcher's lengthy

---

[12] Under federal law, an informant's reliability is assessed under the flexible totality of the circumstances test of *Illinois v. Gates*. Under this test, the fact that an informant has cooperated with a police investigation in a direct and closely supervised capacity (for example, in the controlled purchase or delivery of narcotics) is strong evidence of reliability. *See* LaFave, 2 SEARCH AND SEIZURE § 3.3(f) at 225, n.262; *see also United States v. Fluker*, 543 F.2d 709, 714 (9th Cir. 1976). While the First Circuit has held that a single controlled buy is insufficient *per se* to establish probable cause, *United States v. Khounsavanh*, 113 F.3d 279, 285-286 (1st Cir. 1997), the panel went on to say that, if corroborated, a controlled buy is nonetheless strong evidence of illegal drug activity.

record of arrests and convictions for drug violations, crimes of violence, and firearms violations.[13]

Fletcher next complains that the evidence seized from the storage locker exceed the scope of what was authorized by the Third Warrant.[14] The Fourth Amendment requires that a warrant "particularly describe" the place to be searched and the persons or things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). As to articles and persons to be seized, "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).

The Third Warrant specifically described Unit #26 at Simple Storage as the "premises" to be searched. The warrant also authorized the searching officers to seize "evidence of a crime or criminal activity," namely cocaine and cocaine distribution. Here, what was seized (as listed on the return)

---

[13] By extension, the finding of probable cause with respect to the Third Warrant includes the Second Warrant on which it relied in part (by way of incorporation). Consequently, there is no need for a separate discussion of the Second Warrant other than to note that it contains significant additional corroboration of defendant's (and Cotell's) use of the Clarion Hotel as a base of operation. (Nor are any of the charges in the Indictment based on evidence seized pursuant to the Second Warrant).

[14] Fletcher does not challenge the seizures under the Second Warrant.

consisted of three pistols and ammunition, various drug paraphernalia (including scales, dilutants, and packaging), cocaine, cash, personal papers indicative of ownership and possession, and a stash of 223 pairs of new sneakers and 50 new hats. Significant authority supports the inference that an established and successful drug dealer is likely to keep drugs, proceeds, and records of drug dealing on premises over which he has control. LaFave, SEARCH AND SEIZURE § 3.7(d) at 530-531, n.200. *See also United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999); *United States v. Whitner*, 219 F.3d 289, 297-299 (3d Cir. 2000) (collecting cases). Similarly, firearms are well known tools of the drug trade. *United States v. Walters*, 904 F.2d 765, 769 (1st Cir. 1990). Even that aside, as a known felon, Fletcher had no legal right to be in possession of the pistols and ammunition and the officers had an exigent public safety duty to take them into their custody. Moreover, under the plain view doctrine, police executing a warrant are permitted to seize contraband or stolen goods that come into view during the course of the search.[15] *United States v. Aguirre*, 839 F.2d 854, 858-859 (1st Cir. 1988);

---

[15] A reasonable police officer might well conclude that a trove of 223 pairs of new sneakers hidden in a rental storage unit is stolen property. Alternatively, because the intensity of the permitted search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," *United States v. Ross*, 456 U.S. 798, 824 (1982), the

*United States v. Robles*, 45 F.3d 1, 6 (1st Cir. 1995). Fletcher's assertion of a "grossly excessive" and unconstitutional seizure pursuant to the Third Warrant simply has no teeth.[16]

Fletcher's final argument is that both Detective Kent and Detective Balcom made intentionally false or reckless statements or omissions in their respective affidavits, an issue that he seeks to explore by way of a *Franks* hearing. While a ruling on a motion to suppress is ordinarily confined to the "four corners" of the affidavit, there are circumstances in which a defendant may challenge the truthfulness of statements made by the affiant. *See Franks v. Delaware*, 438 U.S. 154 (1978). To be entitled to a *Franks*

---

police may well and reasonably have believed that cocaine was hidden in the sneakers or the hats. *See also Maryland v. Garrison,* 480 U.S. 79, 84 (1987). CI-2 had told police earlier that Fletcher kept guns and drugs hidden in shoe boxes, as related by Detective Kent in his affidavit.

[16] As back-up insurance, the government also seeks the shelter of the "good faith exception" established in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, Justice White noted that the Court had "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. Justice White concluded that this "[t]his is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. Consequently, in such a circumstance the exclusionary rule does not apply. Because here, I find that neither warrant was invalid nor improperly executed, there is no reason to consider the applicability of the exception.

hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. *Id.* at 155-156, 170.

> The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id. at* 171. If a hearing is warranted, the defendant must prove the knowing falsity or recklessness of the affiant's statements by a preponderance of the evidence. *Id.* at 156.

The defendant must also show that any deliberately false or reckless statement was material to the determination of probable cause. If such a showing is made, the offending statement is excised from the affidavit, which is then reexamined for probable cause. *Id.* at 171-172; *see also Veillette*, 778 F.2d at 903-904; *Doescher v. Estelle*, 666 F.2d 285, 288 (5th Cir. 1982) (evidentiary hearing properly denied, where even if all challenged material was excised, the affidavit demonstrated probable cause).

The reckless omission of material information from the affidavit may

14

also raise a *Franks* issue. *United States v. Rumney,* 867 F.2d 714, 720 (1st Cir. 1989); *cf. United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information."). The omission of a fact that does not cast doubt on the existence of probable cause is not a material misrepresentation. *See United States v. Dennis*, 625 F.2d 782, 791 (8th Cir. 1980). A reviewing court should add any facts intentionally or recklessly omitted from the affidavit and determine whether the new information, if included, would have defeated the finding of probable cause. *United States v. Cole*, 807 F.2d 262, 267-268 (1st Cir. 1986).

With this explanatory legal preface as background, Fletcher's cited misstatements in the two affidavits at issue are, with one exception, trivial and immaterial to a finding of probable cause. Fletcher, for example, complains that Detective Kent stated in his affidavit that his (Fletcher's) criminal record included ten separate arraignments on drug charges when in fact he had been arraigned eleven times for drug violations (in addition to the 49 adult and 21 juvenile arraignments listed by Detective Kent on other offenses ranging from gun offenses to assault with a dangerous weapon).

He also quibbles with differences in the two affidavits as to whether he often or only occasionally frequented the Hampton Inn in West Yarmouth with Cotell. And finally, he objects to being characterized by Detective Balcom as a "drug trafficker" when in truth he is a mere drug dealer.

The one matter that is a material error is Detective Kent's report that officers had seen Fletcher with Cotell at the Hampton Inn on March 29-30, 2015, during which time he had participated in a controlled sale of drugs to CI-1. This is a case of mistaken identity, as Cotell confirmed after the execution of the Second Warrant. (The mistake appears to have arisen from a lack of familiarity on the part of the Yarmouth Police with Fletcher's appearance, as opposed to that of Cotell). Records from the Plymouth County Correctional Facility confirm that on March 29, 2015, Fletcher was in custody awaiting bail and was not released until after 9 p.m. on the night of March 30, 2015. This mistake requires the excision of the description in paragraphs 12, 15, 16, and 18 of Kent's affidavit of Fletcher's alleged dealings with Cotell on the two days in question and a reexamination of the remainder of Third Warrant affidavit for probable cause.[17] That reexamination does

---

[17] It is the Third Warrant that is at issue in that, as previously noted, the Indictment of Fletcher is based on the seizures of drugs and firearms pursuant to the Third Warrant and not the drugs seized pursuant to the

nothing to vitiate the showing of probable cause as the corroborated information of CI-1 and CI-2 remains intact, as does the police surveillance of Fletcher and Cotell in the vicinity of Simple Storage on the night of April 2, 2015, their subsequent sale of drugs to the occupant of the white minivan, and their arrest in possession of drugs and large amounts of cash almost immediately afterwards.

The attack on Detective Balcom's affidavit is, for the most part, a misdirected attack on the credibility of CI-2. A *Franks* hearing is limited to material impeaching the veracity and care *of the affiant*. *Franks v. Delaware*, 438 U.S. at 171. The credibility of a non-governmental confidential informant is tested by the totality of the circumstances as explained in *Gates*. As previously noted, the information provided by CI-2 passes muster under both *Gates* and the more stringent (although now superannuated) *Aguilar-Spinelli* two-pronged test. The best that Fletcher can do is allege that Balcom "knew" that statements offered by CI-2 were

---

Second Warrant. It will be recalled that Detective Balcom incorporated Detective Kent's affidavit in the application for the Third Warrant.

untrue without any offer of proof, affidavits or sworn statements of corroborating witnesses.[18]

ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>. The motion for a *Franks* hearing is also <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[18] The same is true of the assertion that there was no surveillance of Fletcher and Cotell at Simple Storage the night of April 2, 2015. The claim appears based on confusion regarding the separate searches of the two different departments (Yarmouth and Barnstable) involved in the joint investigation. The GPS tracker on Cotell's Ford Explorer places it in the vicinity of Simple Storage at the exact time reported by Detective Balcom in his affidavit.