UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 15-10393-RGS

UNITED STATES OF AMERICA

v.

TIMOTHY FLETCHER

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
FOR A NEW TRIAL OR, IN THE ALTERNATIVE,
FOR A JUDGMENT OF ACQUITTAL

November 2, 2018

STEARNS, D.J.

On July 23, 2018, at the conclusion of a six-day trial, the jury found defendant Timothy Fletcher guilty of being a felon in possession of a firearm, possession of cocaine base with the intent to distribute, and possession of cocaine with the intent to distribute. Fletcher now renews his motion for a judgment of acquittal or, in the alternative, moves for a new trial.[1] Fletcher asserts eleven alleged grounds of error or defect in the trial

---

[1] Pursuant to Fed. R. Crim. P. 33(b)(2), a motion for a new trial must be filed within fourteen days of the jury's verdict (inclusive of intermediate weekend days and holidays), unless the court grants additional time *within* the fourteen day period. *See also* Fed. R. Crim. P. 45(a). The rule is jurisdictional; thus a district court has no discretion to grant an untimely motion. *United States v. DiSanto*, 86 F.3d 1238, 1250 n.12 (1st Cir. 1996). Here the jury returned its guilty verdict on Monday, July 23, 2018. The motion for a new trial was filed on Wednesday, August 8, 2018, sixteen

proceedings: the alleged erroneous admission of insufficiently authenticated evidence (ground 4); the inability to call two defense witnesses at trial because of the court's erroneous denial of a continuance (ground 2); the alleged erroneous admission of fingerprint evidence (ground 9); an alleged failure of the government to produce exculpatory and inculpatory evidence prior to trial (ground 8); the alleged erroneous admission (0r allusion to) one of Fletcher's prior convictions (ground 10); alleged deficiencies in the court's instructions to the jury (grounds 5 and 6); an alleged violation of the court's sequestration order (ground 7); alleged "newly discovered" exculpatory evidence (ground 1); a generalized objection to the admission of "prejudicial" evidence (ground 3); and finally, the verdict itself (ground 11). As the motions for a judgment of acquittal and for a new trial overlap in their legal and factual assertions, I will group them for purposes of discussion.

Many, in fact most, of the grounds of alleged error can be summarily disposed of. The issue of authentication (chain of custody) was the subject of a pretrial ruling, the court noting the well-established rule that weaknesses in the chain of custody go to the weight and not the admissibility of evidence. To the extent that there were questions about the

---

days after the verdict. Counsel, however, asked for, and was granted, a two-day extension of the filing deadline on August 6, 2018.

authenticity of any of the government's exhibits (the court perceived none of a material nature), these were a matter for the jury to resolve. *See United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). The complaint that Fletcher was unable to call two defense witnesses at trial because of "serious medical issues" (namely two investigators that he had retained) fails for the simple reason that he is unable to identify any material testimony of a substantive nature that the witnesses would have offered that (a) would have been admissible at trial, or (b) would not have been cumulative of evidence that was admitted. That aside, the decision whether to grant or deny a continuance is well within the court's discretion, particularly where no fundamental trial right of a defendant is in play. *See United States v. Saccoccia*, 58 F.3d 754, 770 n.12 (1st Cir. 1995); *see also United States v. Waldman*, 579 F.2d 649, 653 (1st Cir. 1978). There is no fundamental right to present testimony that is cumulative or immaterial.

If I understand Fletcher's objection to the admission of fingerprint evidence as raising a question about the scientific validity of the ACE-V identification method, (a) Fletcher never requested a *Daubert* inquiry into its reliability, and (b) had such a request been made it would have been futile as the consensus in the relevant forensic community endorses its validity. *See, e.g., United States v. Mitchell*, 365 F.3d 215, 241-242 (3d Cir.

2004) (Becker, J.); *see also Commonwealth v. Patterson*, 445 Mass. 626, 628 (2005). If the argument is that the print examiner's supervisor (who validated his results) should have been called by the government as a corroborating witness, the law imposes no such requirement. If anything, the law is very flexible with respect to expert testimony. *See Williams v. Illinois*, 567 U.S. 50, 57-58 (2012) (*plurality opinion*) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. . . . We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert witness testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth.").

Fletcher's complaint about the erroneous admission of evidence of one of his prior convictions appears to be based on the government's failure to redact a reference to an arrest for assault and battery with a dangerous weapon from a fingerprint card offered in evidence. The fingerprint card to the best of my memory did not reference a conviction, only an arrest. Even if it did recite a conviction, I am satisfied that any error was harmless given

Fletcher's stipulation (of which the jury was aware) to his status as a convicted felon.

The final of Fletcher's collection of peripheral grievances is the contention that the government failed to produce prior to trial exculpatory evidence (the testifying officers' investigatory notes) and inculpatory evidence (a positive field drug test) in satisfaction of its *Brady* obligation. In the first instance, *Brady* imposes no obligation on the government to disclose inculpatory evidence prior to trial. *See United States v. Prochilo*, 629 F.3d 264, 268-269 (1st Cir. 2011). In the second, absent a court order, there is no duty on the part of government agents to preserve routine notes compiled during an investigation. *See United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988). No order seeking the preservation of the officers' notes was requested by Fletcher, and none was entered.

More substantively, Fletcher objects to the court's instructions on the element of possession.[2] In its entirety, the court instructed the jury on the issue as follows.

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object is in actual possession of that object. However, even when a person does not actually

---

[2] The court will address Fletcher's arguments regarding the jury instructions, although by failing to object at the appropriate point during the trial, Fletcher waived the issue.

possess an object, he may have it in his constructive possession. Constructive possession exists when a person knowingly has the power and the intention at any given time of exercising dominion and control over an item, either directly or through the agency of others. For example, assume that you left a coat or some other personal belonging, such as your purse, in the jury room before taking your seat in the jury box. Although you are not in actual possession of these items at this very moment, they are in your constructive possession. The law recognizes no distinction between actual and constructive possession; proof of either form of possession is sufficient to satisfy this element of the statute.

Possession may be established by either direct evidence or by circumstantial evidence. Possession may be unique to one person or it may be shared jointly with others, as any of you who share a home or a bank account with a spouse will know. But possession is not proved by mere proximity or theoretical access to a firearm or ammunition or drugs; there must be affirmative proof that the defendant knowingly possessed the items at issue, either actually or constructively.

The first of Fletcher's objections is to the sentence that "[p]ossession may be unique to one person or it may be shared jointly with others, as any of you who share a home or a bank account with a spouse will know." Fletcher argues that the instruction is "confusing as it misleads the jury into believing that by simply sharing some type of location or account, one legally possesses an item." Def.'s Mem. at 9. This is simply an incorrect statement of law. There is no requirement that a person must have legal title to an item to be in possession of it. A thief, for example, possesses the items that he steals even though no one would argue that he has a

defensible ownership interest in the stolen goods.[3] The second objection was to the court's failure to instruct the jury that the mere touching of an item "is insufficient to imply legal possession." *Id.* The short answer is that Fletcher never requested an instruction on "mere touching," and had it been requested, it would not have been given as the evidence (which included Fletcher's fingerprints on a disputed firearm and magazine) would not have warranted such an instruction.[4]

Fletcher's argument that a brief meeting between Deputy Chief Balcom and another officer witness, Detective Colin Kelley, during the trial violated the court's witness sequestration order is based on a misunderstanding of Fed. R. Evid. 615.[5] The factual background is straightforward. During the cross-examination of Balcom, Fletcher's counsel challenged the veracity of Balcom's testimony regarding a controlled purchase of a gram of cocaine by a cooperating witness. Balcom

---

[3] In his Proposed Jury Instructions, Fletcher stated the law correctly: "The term 'possess' means to exercise authority, dominion or control over something. It is not necessarily the same thing as a legal possession." *See* Dkt #121 at 27.

[4] Fletcher's Proposed Instruction that "[b]riefness of contact alone does not preclude a finding of possession," Dkt #121 at 28, was less favorable to his present argument than the instruction that the court actually gave.

[5] The Rule 615 sequestration order was entered at the government's request, not Fletcher's.

later instructed Kelley to bring the drug to the courthouse in the event counsel insisted on production. The ensuing interaction between the two officers, whether it involved conversation or not, did not amount to a violation of the sequestration order. Rule 615 does not, by its explicit terms, prevent one witness from speaking to another. Rather, it only prevents a witness from being present while another witness testifies in open court, unless the court, in its discretion, enters an order barring out-of-court communications among witnesses. *See United States v. Sepulveda*, 15 F.3d 1161, 1175-1176 (1st Cir. 1993).[6] The order issued in Fetcher's trial was a narrow one, going only so far as Rule 615 requires, and no further.

Fletcher's next asserted ground involves a claim of newly discovered evidence, specifically his counsel's assertion that his post-trial investigation of the parking lot at the Simple Storage facility where Fletcher leased a locker, "proved" that Balcom could not have seen Fletcher in the vicinity of the locker on the night that he was arrested (as Balcom testified). In its essence, counsel states that following the trial, he and two others attempted

---

[6] As a leading treatise points out, blanket orders barring out-of-court communications among witnesses are difficult to enforce, can impose significant hardships, particularly where witnesses live or work together, and are of questionable efficacy. 29 Wright & Gold, FEDERAL PRACTICE AND PROCEDURE, § 6243 at 66 (2d ed. 2016).

to recreate the scene as Balcom purportedly described it at trial. Two photographs were taken from Balcom's presumed location, and "[e]ven using zoom-in features on the photograph, defense counsel was not able to identify himself from the vantage points described by Balcom." Def.'s Mem. at 5 (Dkt #188).

"In order to be entitled to a new trial based upon newly-discovered evidence, the defendant must show: (1) the evidence was not known or unavailable to defendant at the time of trial; (2) the failure to discover the evidence was not due to a lack of diligence on the part of defendant; (3) the new evidence is material and not merely cumulative or impeaching; and (4) the evidence would probably produce an acquittal upon retrial of the defendant." *United States v. Benavente Gomez*, 921 F.2d 378, 382 (1st Cir. 1990). If any one of these four factors is lacking, the motion for a new trial is to be denied. *United States v. Natanel*, 938 F.2d 302, 313 (1st Cir. 1991). Here, with the possible exception of the third factor, Fletcher makes no plausible showing with respect to the other three.[7] Consequently, his claim of "newly discovered evidence" must be rejected.[8]

---

[7] Counsel contends that the government had given him three different accounts of Balcom's surveillance and identification of Fletcher on the evening of April 2, 2015, and he therefore did not know which version Balcom would testify to at trial. Assuming that this is true, Balcom testified early in the trial. Given the fact that the trial adjourned each day at 1 p.m.

9

LEGAL STANDARDS

A district court's power to order a new trial is greater than its power to grant a motion for acquittal. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *Id.* Nonetheless, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996), quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979). In considering a motion for a judgment of acquittal, "the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995). Here, there being no viable ground

---

and a weekend intervened before closing arguments, there is no reason that counsel could have not undertaken his field experiment before resting the defense.

[8] A less stringent standard applies in assessing the fourth factor when the newly-discovered evidence should have been produced as exculpatory under *Brady*. *United States v. Conley*, 249 F.3d 38, 45 (1st Cir. 2001) (a "reasonable probability" of a different result rather than an "actual probability"). The identification evidence attributed to Balcom is, of course, inculpatory, not exculpatory.

for ordering a new trial, it follows that the motion for a judgment of acquittal must be denied as well.

ORDER

For the foregoing reasons, the motions for a new trial or, in the alternative, for a judgment of acquittal, are <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE